UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EULOGIO RAMIRO MORENO RAMIREZ (A# 241-107-849),

Petitioner,

v.

WARDEN,

Respondent.

No. 1:26-cv-09035 TLN SCR

ORDER AND

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee proceeding pro se with a habeas corpus action pursuant to 28 U.S.C. § 2241. The assigned District Judge referred the matter to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. ECF No. 3-2.

## I. Factual and Procedural History

Petitioner is a citizen and national of Mexico who has been in the custody of Immigration and Customs Enforcement ("ICE") since May 8, 2026. ECF No. 1 at 11. He is currently detained at the California City Detention Facility within this judicial district. Id. at 18. Petitioner filed this petition on November 2, 2026, challenging his ongoing, prolonged detention without bond under the Due Process Clause of the Fifth Amendment. Id. at 16-17. On November 3, 2026, an immigration judge ("IJ") ordered Petitioner removed to Mexico. ECF No. 6-1. Petitioner waived appeal. Id. at 2. Respondent argues that Petitioner is now within the 90-day removal period in

which detention is mandatory and urges the Court to dismiss the petition. ECF No. 6.

## II. Legal Standard

Detention is mandatory during the 90-day "removal period" following the entry of a final order of removal. See 8 U.S.C. § 1231(a)(1)-(2). "This 'removal period' begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and [the Ninth Circuit Court of Appeals] stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." Avilez v. Garland, 69 F.4th 525, 531 (9th Cir. 2023) (quoting 8 U.S.C. § 1231(a)(1)(B)(i)-(iii)).

An order of removal becomes final "only upon the earlier of (i) a BIA determination affirming the order or (ii) the expiration of the deadline to seek the BIA's review of the order." Ocampo v. Holder, 629 F.3d 923, 926 (9th Cir. 2010) (citing 8 U.S.C. § 1101(a)(47)(B)). DHS regulations further clarify that "[e]xcept when certified to the [BIA], the decision of the [IJ] becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first." 8 C.F.R. § 1003.39; see also 8 C.F.R. § 1241.1(b) (order of removal becomes final "[u]pon waiver of appeal by the respondent").

This statutory scheme also implicates petitioner's due process rights under the Fifth Amendment. See Zadvydas v. Davis, 533 U.S. 678, 692 (2001) (describing "[t]he serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any such protection" as "obvious"); see also Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that a DHS regulation governing post-final order removal detention was "promulgated to protect a fundamental right derived from the Constitution or a federal statute[.]"). In Zadvydas, 533 U.S. 678, the Supreme Court read an implicit due process limitation into 8 U.S.C. § 1231(a)(6), in order to avoid serious constitutional problems. The Supreme Court concluded that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. As a result, the Supreme Court held that "once [a noncitizen's] removal is no longer reasonably foreseeable,

continued detention is no longer authorized by statute." Id. at 699. In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six-month period of detention. Id. at 701. After six months, if a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

While the Supreme Court has upheld the facial constitutionality of mandatory detention statutes, including § 1226(c) in Demore v. Kim, 538 U.S. 510 (2003), it has also recognized that petitioners may bring as-applied constitutional challenges to their own detention under such statutes. See Nielsen v. Preap, 586 U.S. 392 (2019) (recognizing the right to bring such as-applied challenges: "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it."); see also Demore, 538 U.S. at 532 (Kennedy, J., concurring) ("[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [noncitizen] . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."). Accordingly, the detention of any particular person under § 1231(a)(2) is subject to constitutional limitations on an as-applied basis.

Courts examine procedural due process claims in two steps. The first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

## III. Analysis

The undersigned has no information regarding Petitioner's immigration history or the

statutory authority for his pre-removal detention.[1] However, it is undisputed that an IJ ordered Petitioner removed to Mexico on November 3, 2026, and both DHS and Petitioner waived appeal. ECF No. 6-1 at 2. By operation of statute and DHS regulation, Petitioner's removal became administratively final on that date. 8 U.S.C. § 1231(a)(1)(B)(i); 8 C.F.R. § 1003.39. Therefore, Petitioner entered the 90-day "removal period" on November 3, 2026, just one day after he initiated this action, and will be subject to mandatory detention through about February 1, 2027.

Respondent contends that the 90-day mandatory detention period of 8 U.S.C. § 1231(a)(2) is conclusive in resolving this case against petitioner. ECF No. 6. Indeed, the Ninth Circuit has found that detention during the 90-day removal period pursuant to § 1231(a) passes constitutional scrutiny. Khotesouvan v. Morones, 386 F.3d 1298, 1301 (9th Cir. 2004) (affirming dismissal of § 2241 petitions filed by two petitioners during the 90-day removal period); see also G.A. v. Warden of the Mesa Verde Det. Ctr., No. 1:26-CV-02419-TLN-SCR, 2026 WL 2070026, at *2 (E.D. Cal. July 17, 2026) (denying habeas petition where petitioner was subject to mandatory detention under § 1231(a)(2) and filed his petition within the removal period); T.M. v. Warden of the Golden State Annex, No. 1:26-CV-03789-TLN-CSK, 2026 WL 2210030, at *2 (E.D. Cal. July 31, 2026) (same).

However, the undersigned does not read Khotesouvan as foreclosing all as-applied challenges to detention during the 90-day removal period. For instance, in Doe v. Becerra, 697 F.Supp.3d 937 (N.D. Cal. 2023), a judge granted a habeas petition and ordered a "constitutional compliant bond hearing" before an IJ where the petitioner's detention had reached 21 months before his detention shifted to § 1231(a). As the Court in Doe found, "[t]he IJ's final order of removal may have started a new clock for the Government to take a different type of action, but it did not reset the clock as to the time Doe has been detained without a bond hearing." 697 F.Supp.3d at 943. Similarly, in J.B. v. Warden of the California City Det. Facility, No. 1:26-CV-02978-TLN-SCR, 2026 WL 2137754, at *4-5 (E.D. Cal. July 24, 2026), the assigned District distinguished Khotesouvan by noting the petitioner "has been held in immigration custody for 18

[1] Respondent submitted Petitioner's removal order but has not submitted Petitioner's Form I-213 or any other relevant A-File records as required by Judge Nunley's standing order. ECF No. 3-2.

months with no opportunity to be heard as to his custodial status" and emphasized that the hostile relationship between the Petitioner's native country and the United States made it "difficult for the Court to see how his removal could be effected in a reasonably expeditious manner."

But while Petitioner's current § 1231(a)(2) status is not determinative to the due process analysis, the undersigned ultimately finds no basis on which to meaningfully distinguish this case from Khotesouvan and its progeny. Unlike the petitioners in Doe and J.B., Petitioner's detention did not shift to § 1231(a)(2) after a prolonged period of earlier, pre-removal detention. Assuming, as the petition alleges, that Petitioner was subject to a mandatory detention statute during removal proceedings (again, Respondent failed to provide any information regarding his immigration history), his pre-removal detention fell just short of the six-month threshold that the Ninth Circuit has referred to as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207 (9th Cir. 2022) (citations omitted); see also Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent"); Cabral v. Decker, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (noting that petitioner's seven-month detention under § 1226(c) was "within the range . . . sufficient to show a due process violation").

Thus, because Petitioner's pre-removal detention did not yet implicate his "unquestionably substantial" liberty interest in freedom from prolonged detention, Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011), the undersigned finds that his current, mandatory detention under § 1231(a)(2) passes constitutional scrutiny. Accordingly, pursuant to Khotesouvan, and consistent with Judge Nunley's reasoning in G.A. and T.M., supra, the undersigned finds that Petitioner is lawfully subject to mandatory detention under 8 U.S.C. § 1231(a)(2) and recommends his § 2241 petition be denied. The undersigned recommends that the petition be denied without prejudice and not foreclose Petitioner's ability to challenge the constitutionally of his immigration detention when and if it should shift to 8 U.S.C. § 1231(a)(6).

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Petitioner's motion to proceed in forma pauperis is GRANTED.

Additionally, IT IS HERBEY RECOMMENDED that:

1. Petitioner's application for writ of habeas corpus (ECF No. 1) be DENIED without prejudice.

2. The Clerk of the Court be directed to enter judgment for Respondent and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 24, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE